FILED
 2006 Mar-07  PM 01:14
 U.S. DISTRICT COURT
 N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES DILLMAN; BARBARA DILLMAN, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CV 04-B-0333-S ) |
| BAPTIST HEALTH SYSTEMS, INC., d/b/a Baptist Medical Center-Montclair; CARDIO-THORACIC SURGEONS, P.C.; C. DUANE RANDLEMAN, JR.; A N E S T H E S I O L O G I S T S ASSOCIATED, P.C.; JOHN CHARLES SPIVAK; DIANNE BARNARD, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on Motion for Summary Judgment, (doc. 32), filed by defendant Baptist Health Systems, Inc. ["BHS"]. Plaintiffs have sued defendants for damages based upon alleged medical malpractice that caused plaintiff Charles Dillman injuries; plaintiff Barbara Dillman, Charles Dillman's wife, claims damages caused by loss of consortium. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Motion for Summary Judgment, (doc. 32), is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

On or about August 28, 2002, plaintiff Charles Dillman underwent a procedure for implantation of an automatic implantable cardioverter defribrillator ["AICD"] at Baptist

Medical Center–Montclair, which is owned and operated by defendant BHS. (*See* doc. 1 ¶ 9.) While placing the leads of the AICD, the surgeon, defendant C. Duane Randleman, Jr., mistakenly stuck the needle into plaintiff's lung; this caused bleeding into plaintiff's endotracheal tube. (Doc. 29, Ex. A ¶ 3.) When the initial bleeding seemed to stop, defendant Randleman stepped into the hallway outside the operating room to write his operative note, and his assistant was instructed to close plaintiff's incision. (Doc. 37, ex. 3 at 115, 118-19.) After three or four minutes, one of the operating room nurses called defendant Randleman back to the operating room, telling him that plaintiff's blood pressure had decreased. (*Id*. at 121-22.)

Defendant Randleman was concerned that plaintiff may have had a tension pneumothorax. (*Id*. at 123.) Using a fiberoptic bronchoscopy, he looked down plaintiff's endotracheal tube and saw nothing but blood. (*Id*. at 124.) At this time, the blood gas readings did not indicate that plaintiff was hypoxic. (Doc. 32, Ex. 2 at 2.) At Randleman's instructions, the operating room personnel prepared plaintiff for a chest incision, and Randleman left the operating room to scrub for surgery. (Doc. 37, Ex. 3 at 136, 138.) When he returned a few minutes later, a heart/lung bypass machine was in the operating room. (*Id*. at 138-39.)

After Randleman returned, plaintiff's ST segment was elevated, followed by a fibrillation and an arrest. (Doc. 32, Ex. 2 at 2.) CPR was performed and Randleman opened plaintiff's chest and performed open heart massage before plaintiff was placed on the bypass

3

machine. (*Id.*) According to the anesthesia record, plaintiff's chest was opened at 6:15 and he was placed on the bypass machine at 6:35. (Doc. 37, Ex. 1 at 1.)

Defendant John Charles Spivak, the anesthesiologist, testified that having a bypass machine immediately available is not part of the standard of care for an AICD." (*Id.*, Ex. 4 at 187.)

### III. <u>DISCUSSION</u>

In their Response and Opposition to Motion for Summary Judgment, plaintiffs contend, "The failure of the hospital to have [the heart bypass machine] . . . readily available is not within the standard of care." (Doc. 38 at 3.) At oral argument, plaintiffs conceded that their only claim against defendant BHS was negligence based on its alleged failure to have a bypass machine readily available to resuscitate plaintiff during the AICD procedure. Because defendant BHS's liability rests upon a determination that it was negligent in providing health care services to plaintiff, the Alabama Medical Liability Act [AMLA] requires plaintiffs to present expert testimony to establish the appropriate standard of care allegedly breached by defendant BHS.

> The AMLA governs medical-malpractice actions in Alabama. *Mock v. Allen*, 783 So.2d 828, 832 (Ala.2000). Its purpose is, among other things, to impose a duty upon health-care providers "to exercise such reasonable care, diligence and skill" as other health-care providers in the same general line of practice. Ala. Code 1975, § 6-5-484; see also § 6-5-548(a). The AMLA applies "[i]n any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care." Ala. Code 1975, § 6-5-548(a). The AMLA includes within the definition of a health-care provider "[a] . . . hospital[] or other health care

4

provider as [that term is] defined in Section 6-5-481." Ala. Code 1975, § 6-5-542.

*George H. Lanier Memorial Hosp. v. Andrews*, 901 So. 2d 714, 720 (Ala. 2004). The AMLA provides, "plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case." Ala. Code § 6-5-548(a). To this end, plaintiff must use expert testimony from a "similarly situated health care provider" to establish the appropriate standard of care. *See id*. (b) and (c); *see also Pruitt v. Zeiger*, 590 So.2d 236, 237-38 (Ala. 1991).[1]

At oral argument, plaintiffs conceded that they did not have expert testimony disputing defendant Spivak's testimony that the applicable standard of care did not require a bypass machine to be in the operating room during an ACID implantation or otherwise

---

[1] In *Pruitt*, the Alabama Supreme Court held:

> The plaintiff in a medical malpractice action must ordinarily establish the defendant physician's negligence through expert testimony as to the standard of care and the proper medical treatment. Although an exception exists when the breach of the standard of care is obvious to the average layperson, we do not find this exception applicable in the present case. Where this exception is inapplicable, the expert witness must establish 1) the appropriate standard of care, 2) the doctor's deviation from that standard, and 3) a proximate causal connection between the doctor's act or omission constituting the breach and the injury sustained by the plaintiff.

*Pruitt*, 590 So. 2d at 237-38 (internal citations and quotes omitted).

establishing that defendant BHS breached the applicable standard of care in this case.[2] Accordingly, under § 6-5-548, Ala. Code 1975, the court finds that there is no expert testimony sufficient to establish a question of fact as to the applicable standard of care and whether defendant BHS breached the standard of care.

Defendant BHS's Motion for Summary Judgment is due to be granted.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant BHS is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment, (doc. 32), will be entered contemporaneously with this Memorandum Opinion.

---

[2]Under Alabama law –

> the trial court must answer three questions before deciding whether a proffered expert witness qualifies as a "similarly situated health care provider" within the meaning of the statute: (1) What is the standard of care alleged to have been breached? (2) Is the defendant "health care provider" a specialist in the discipline or school of practice of the standard of care that the court has previously determined is alleged to have been breached? (3) Does the proffered expert witness qualify as a "similarly situated health care provider" under the subsection determined in the second step to apply.

*Medlin v. Crosby*, 583 So. 2d 1290, 1293 (Ala. 1991).  Plaintiffs did not submit evidence from any expert regarding whether a bypass machine should be readily available during an ACID procedure; therefore, the court need not address whether the expert was a similarly situated health care provider.

**DONE**, this 7th day of March, 2006.

                                          */s/ Sharon Lovelace Blackburn*
                                          SHARON LOVELACE BLACKBURN
                                          UNITED STATES DISTRICT JUDGE